Good morning, and may it please the Court, Michael Tanaka, Deputy Federal Public Defender, appearing on behalf of Scott Sperling. There are two issues in this case, and although one of them goes to the constitutionality of the statute and is an issue of first impression, I want to talk about the revocation issue first, because it is very consequential. When we take away a man's freedom, we should do it on the basis of reliable evidence. Here, there is no reliable evidence that he possessed or viewed the images found on that computer. It seems to me you're just making a jury argument. If there's evidence, what is the standard of review in the revocation proceeding? It's an abuse of discretion, but nonetheless... Abuse of discretion, meaning what? There has to be clear error as to the facts, right? That's correct, Your Honor. Well, if in fact, then, there are any facts in the record that are not clearly erroneous, which support the district court's determination, then I'm finding a tough time as to how we get to your reliable evidence argument. Well, respectfully, Your Honor, I would submit that... Respectfully, I want to add to it. It seems to me all you're doing is making a jury argument. The jury determined that. The district court was the jury, and they determined what was the evidence necessary to make the determination they had to make. All you're suggesting is that I've got other evidence in the record that's opposite of that, so I ought to win. Yes and no. I mean, I don't understand it, because there's no question the computer was unmonitored for three days. There's no question the unallocated space of the computer contained 27 images of child pornography. There's no question the browsers operating in private or incognito mode place any files accessed while in that mode in the unallocated space. There's no question the computer used private or incognito modes in both the Explorer and Chrome during the three days the computer was unmonitored. And there's no question that there was non-private browsing evidence of Internet searches for pove little pussy not associated with a browser-suggested search. And you're suggesting there's no evidence to sustain what the district court said? Yes, Your Honor. Well, I think you're just arguing I've got other evidence I'd rather the district court accept, because this is the evidence. And on my standard of review, which you've now agreed to, clear air, I don't know how to go around that. I think we operate in the real world here, and though you can string a bunch of accepting each of those factual statements that you just made is true, and there is no dispute about that, they still don't prove that he possessed that. But can't we make reasonable inferences from those facts? Yes, you can. I suggest those inferences are totally unreasonable given the whole of the record. What's the portion of the record that you contend makes these inferences unreasonable? Two things, basically. One, that he didn't have sole possession of that computer. It was a used computer. I think that's undisputed and otherwise would be clearly erroneous. The district court made a finding on that, that the accompanying receipts refuted his argument that someone else had information on the computer. So why is that clearly erroneous? Because, well, one, it's not all that clear that the district court made that clarifying and the district court sort of accepted what the government said and the government adopted the argument. But there was paper evidence. I mean, it wasn't just the government making a representation. There was documentary evidence to support the government's argument. Okay, we have one receipt that says new. But why couldn't the court believe that it was new because the receipt said new? Because the entire record refuted that. I mean, just because you have one little piece of evidence and it's not like a credibility determination. You have to review that in light of the entire documentary evidence, which was the computer was four years old when he bought it in terms of the operating system. Can you buy a car that's four years old and never been driven? You can. I suspect that it's pretty rare. Couldn't the same thing be true with a computer, though? It's possible. But then we have the other evidence that the man who sold it to him said it was used. You know, that's... Do you think it's a jury argument when the jury went down against you because the jury was the judge? I would suggest that it was insufficient as a matter of law because the jury's conclusion was not based on reliable evidence. What's the burden that the prosecutor has here? The burden was by a preponderance. By a preponderance. We don't even have to have clear and convincing. No, it's a low burden. We don't need anything. All we need is preponderance. Which it's a little... It's a tough climb for you. Yeah, but it's a little illogical that we're going to look at something on preponderance, and I don't think it meets that, but nonetheless. And then we're going to view it for an abuse of discretion. And then... But this man has been sent away for five years. He's been ripped from his home on something that I suspect if we all stepped back, we'd say, you know, he's not responsible for that. But let me get... But that's not what we get to do. That's the difficulty. We don't get to step back and say, if we were viewing this, this is how we would view it. That's the difficulty. No, I understand that. I understand that. And I believe, though, if you take a close look at this, you would agree with me. But I don't want to belabor that any longer. Well, we've taken a close look. Please believe me. Okay. We look at everything very closely. Let me get to the second issue, then, which... And as I said, I would urge you to follow the Tenth Circuit case, Hayman, which is very cogently and very persuasively written. But the crux is that we've taken... Because the district court found by preponderance that this man committed a specified new offense, his minimum sentence went from zero to five years. His maximum sentence went from two years to life, and all based on a finding made by a court by preponderance without a jury. And that's clearly a violation of Alene, Apprendi, and Booker. Whether you call it a Sixth Amendment violation or a Fifth Amendment violation, it's clearly punishment for new conduct, which is unconstitutional. And that's what Hayman found. It's not unconstitutional. What you're saying is that it has to be found by a jury. There's two ways of looking at it. And admittedly, I didn't argue the statute was unconstitutional. The way that Hayman found, I looked at it as the only way this could be constitutional conduct is if you did sort of what the Supreme Court did in Booker, is excise that part of the statute and made that finding, not Booker, but made the finding by a jury and beyond a reasonable doubt. That would make it unconstitutional. Was the Sixth Amendment argument made at the district court level? The argument was made that you couldn't do this by preponderance. But the specific Apprendi Sixth Amendment argument, Booker argument, that was not made before the district court. Not made specifically. How do we preserve it for appeal if you don't do that? I appreciate your argument. And even if I buy your argument, what you're saying is I ought to follow the Tenth Circuit rather than looking at Johnson and United States v. Gavalinis. I say it Ocaranza, but I'm not sure that's what it is. But the biggest problem I had is I don't think it was preserved. I believe it was preserved, but I don't want to belabor that point either because in this case it makes not one little difference. The sentencing occurred before the Tenth Circuit case. Pardon? The sentencing took place before the Tenth Circuit decided its case. That's correct. But if you wanted to make a Sixth Amendment argument, you didn't need the Tenth Circuit case to make that argument. That's correct. On plain error, it's plain as of the time of the appeal. I guess I'm wondering why it makes no difference whether they preserved it or not. Because the argument at heart is that either the sentence or the statute is unconstitutional. Which you didn't make. Which argument you did not make. I'm making it now. Okay. And I'm to suggest that that's enough. I believe under this Court's precedent that's clearly enough. It's error that's plain as of the time of the appeal. It affects substantial rights because anytime someone is sentenced to a sentence that is more than the statute permits, it's unconstitutional. Is there a Ninth Circuit case contrary to Hayden, to the Tenth Circuit case? No, there's not. The only case that even touches this area is Huerta Pimentel, which is totally, totally different. That did not involve a sentence above the statutory maximum. What do you do with Galavanes-Ocoranza, which is at 772-Fed 3rd, where it says, We have held that the supervised release system under 18 U.S.C. 3583, including revocation of supervised release and imposition of additional prison time as a result of a term of release, does not violate a defendant's right to trial by jury. What do you do with that case? I have no quarrel with that proposition in the context of supervised release generally, Talking about revocation. Right, where revocation, where the 3583E3 sets ranges for imprisonment following revocation. The max is at five for an initial crime that was a life sentence. And then they're all keyed to the initial offense. So in that context, yes, revocation is part of the original crime, and there is no, doesn't implicate the Sixth Amendment right. Even though you can impose prison term on a revocation. Even though, because that's part of the, like parole, supervised release, it's part of the initial scheme. But 3583K is something wholly apart from that. It has nothing or little to do with the initial offense, and everything to do with the new offense. So it's the only one where the new offense is the thing that triggers both a mandatory minimum and a max that's eons above anything that was permitted by 3583E3, which is the general statute, and which is the statute that all those cases were dealing with. Counsel, how can we get to plain error when there is no Supreme Court authority or Ninth Circuit authority that takes the position that you are espousing? Your Honor, I submit that a simple application of a lien, of Booker, of Apprendi, compel the result here. There doesn't have to be a case on all fours. The error is plain in light of those cases. But if that's true, then the objection could have been raised at the time. If that case law was out there, then the Sixth Amendment argument could have been raised. That's why we're even talking about plain error. So you don't need the Tenth Circuit case, is that what you're saying? Yes. The Tenth Circuit case obviously helps, and I love that it's there. But, no, this Court could have done in the first instance what the Tenth Circuit did, and I urge to do that rather than create a needless circuit split where we have a really good decision resolving this case. All right. Thank you, Counsel. We've helped you exceed your time. We'll give you a minute for rebuttal. Good morning, and may it please the Court. Suresh Appelbe about to charge you for the United States. While on supervised release for his child pornography conviction, defendant attempted to thwart the U.S. Probation Office's ability to track his Internet activity by removing court-ordered monitoring software from his computer. And during the three days that his computer was unmonitored, defendants' search for the term POV little pussy and multiple images, including images consistent with that search term, were found on his computer when it was seized and searched by the U.S. Probation Office. The district court's order revoking defendant's supervised release and sentencing him to five years' imprisonment should be affirmed for three reasons. Can I ask you, he only pled guilty to one of the four charges of violating a supervised release, and that was modification of his computer without prior USPO approval. Correct, Your Honor. But he's not, he's actually sentenced as if he had pled guilty to much more than that. He's sentenced based upon a finding that he has violated other conditions, including the condition that he not possess child pornography and that he not commit one of the enumerated offenses in 3583K, which here what was alleged is his possession of child pornography or accessing with intent to view child pornography. And I agree that those were not the conceded errors, but based on just the conceded violation, the violation of allegation number one, and the second violation regarding the use of the LG tablet that the defendant does not contest on this appeal, those two conceded violations alone are sufficient to support the district court's order revoking supervised release. So really what we have here is a challenge to the sentence, and defendant is claiming that his sentence is based on insubstantial evidence or is violative of his constitutional rights. And both of those arguments fail on this record as a matter of fact and law. I'd like to start with the sufficiency of the... opinion in the Tenth Circuit. So turning to Haymond, the government's position is that Haymond is inconsistent with Supreme Court precedent and this court's own precedence regarding supervised release. The Sixth Amendment issue that the defendant raises, we agree, is a matter of first impression in this circuit, but it has been addressed by two courts. The Fourth Circuit in Ward held that mandatory revocation and imprisonment under a prior version of 3583G did not violate a defendant's Sixth Amendment rights, and the divided panel in Haymond of the Tenth Circuit held the exact opposite as to 3583K. Would the Tenth Circuit opinion in Haymond be a new case that might play into plain error review? It... It's not the way he's arguing it, but... It is... the government is not taking the position that the court cannot consider the way that Haymond resolved the Sixth Amendment issue, but simply that Haymond got it wrong, that the dissenting opinion in Haymond has the better of the logic, that the dissenting opinion in Haymond and that the majority opinion in Ward... The dissenting opinion said the Supreme Court should do it. Correct, that was the fallback, but also the dissenting opinion recognized, as Ward did, that releasees are individuals who enjoy only a conditional liberty. They don't enjoy the full panoply of rights secured under the Fourth, Fifth, and Sixth Amendments, but by virtue of being on supervised release, they necessarily give up certain core constitutional rights, which have always included, in relevant part, the right to a jury trial... Which, by the way, you could have prosecuted him, and in order to get a conviction, if you had prosecuted him, you would have had to prove it beyond a reasonable doubt. That is true, Your Honor. So, right now, we have a situation where he gets from what is essentially a new crime, whatever fiction we want to talk about in terms of that it's simply part of the last crime, and for a mandatory minimum sentence of five years, and without the benefit of a jury trial, which he would have had if he had chosen to prosecute him for that particular crime that the five-year mandatory was based on. So, a few points in response to that. First, the defendant is not situated as somebody who is being charged under 18 U.S.C. 2252A for the first time, in that he, unlike a criminal defendant who has not been convicted, is subject to a conditional liberty, and that conditional liberty, as Johnson recognized, results in giving up certain rights. And the way that Johnson approached this issue about whether supervised release proceedings and the revocation and imprisonment for supervised release violations constitutes new punishment, it resolved the issue by holding that we cannot interpret these things as new punishment, because if we did, that would raise grave constitutional concerns. So the way that Johnson remedied the issue is by saying supervised release proceedings, which occur during a period when an individual is subject to certain conditional liberties, when the individual does not enjoy the full panoply of rights, including the Sixth Amendment's protections of right to a trial by jury, that revocation and imprisonment in the supervised release context is just execution of the original sentence. That is a position that was stated by this court originally in Soto Olivas, when it said supervised release is part of the sentence itself, and when we revoke and imprison based on violations of supervised release, we are executing the original sentence. Johnson and the Supreme Court's decision in Johnson canonized that principle, and then Huerta-Pimentel reaffirms that principle, and as Judge Smith recognized, Gavilanes is a case that really brings the principle into sharpest relief. Gavilanes is addressing two Sixth Amendment challenges to a supervised release scheme. First, the petitioner there is claiming that his supervised release proceedings, where they took place three years after the underlying conduct, violated his speedy trial rights under the Sixth Amendment, and then in the wake of the Supreme Court's decision in Alleyne, held that the supervised release proceedings violate his right to trial by a jury. And the way that Gavilanes approaches the issue is, first by looking to the conditional liberty of releasees, and saying that that is exactly what makes supervised release proceedings different in kind from criminal proceedings. And the Sixth Amendment has only ever been interpreted to apply to criminal proceedings, and so if supervised release proceedings are definitionally not criminal proceedings, they do not engage the protections of the Sixth Amendment. And so under the logic of Gavilanes, it necessarily follows that Apprendi is not triggered by supervised release proceedings, that Booker, which is a Sixth Amendment decision relying wholly on Apprendi, is not implicated in supervised release proceedings, and that Alleyne, also an Apprendi-based Sixth Amendment decision, does not apply in supervised release proceedings. The government's position here is that the mandatory revocation and imprisonment under 3583K does not implicate, much less violate, the Sixth Amendment right to a jury trial. But the government is not taking the position that there's no constitutional backstop whatsoever. There is and there always has been in supervised release proceedings, which is due process protections. A defendant in supervised release proceedings always has the protection against court or congressional action that is arbitrary, capricious, or irrational by claiming that those are due process violations. But those issues have to be preserved, and naturally the showing for a due process violation is substantially higher than the showing for an Apprendi violation, an Alleyne violation, a Booker violation, as those things happen in the context of criminal proceedings, which this is not. I think to borrow a phrase from Judge Friendly is what processes do when you want to sentence somebody to a mandatory five-year sentence for a crime which had you chosen to prosecute him, which you could have done and which I suppose you didn't because you would have to prove it beyond reasonable doubt. What processes do under those circumstances? Well, the process I think depends on the form in which we're discussing these things. When the conduct is interpreted as a breach of the court's trust where the individual is still under supervised release, the process that is due is the process that has always been due. A fair hearing before a judge, factual findings by the judge that are supported by evidence in the record, and then the judge is able to impose for the breach of trust that Congress has decided in 3583K is a significant breach of trust that the five-year mandatory minimum does apply. And Congress, at the same time that it enacts this five-year mandatory minimum in the Adam Walsh Act, also enhances the recidivist penalties for individuals who are charged with the crimes for the same conduct. So if the defendant had been charged criminally, he would be facing a 10-year mandatory minimum, and yes, the government would have to prove beyond a reasonable doubt that he committed that conduct in order to trigger the heightened penalty. But just because Congress said— There's nothing in this record to suggest that the government went this way simply because they didn't think they could prove the burden, meet the burden in prosecuting him straight up, is there? There is no such evidence. And, Your Honor, we're dealing in the context where this individual was violated by the probation office based on the probation office's forensic findings, which the court, the district court here, accepted and adopted the government's interpretation of those forensic findings. But that thing would have stopped you. That wouldn't have certainly stopped you from bringing a separate criminal case, which you could have gotten a much more severe sentence. That's true, but that option also remains available to the government, and the only reason it remains available to the government is because Johnson held that revocation and imprisonment in supervised release proceedings is not a criminal proceeding. It's reimposition of the original sentence, and so if the government were to prosecute the defendant criminally for the same conduct, it wouldn't raise double jeopardy concerns. Johnson addressed that question. That's suggesting that it would. That's not the issue. But it does go to the issue of why supervised release proceedings are different in kind from criminal proceedings, and it's because they do not constitute punishment for new conduct, but rather under current and prevailing Supreme Court precedent and the precedent of this own circuit in Huerta Pimental in Gavilanes, Ocarranza, it is the reimposition of the original sentence, it is a non-criminal proceeding, and individuals in supervised release proceedings do not enjoy the protections of the Sixth Amendment. So you did him a favor, essentially, by proceeding under a violation of supervised release instead of prosecuting him. I'm not sure that the defendant would agree with that. Well, and he can still be prosecuted, so the government still has the discretion to prosecute him. Correct, Your Honor. That remains to be seen. But I mean taking the opposite point of view, merely for the fact that we might need a little bit of opposition here, if, in fact, one is to suggest that imposing the terms of a prison term for violating supervised release for violating the law again, and one says one can't do that because one could charge and go through the process, then there would be no reason to have in the terms and conditions of release not to violate the law, would there? Correct. It would essentially make that standard condition of supervised release meaningless. And another thing, in the way that the Hayman majority categorizes 3583K proceedings as punishment for new conduct, the dissent notes that that logic would necessarily apply to any supervised release proceeding that results in revocation and imprisonment, which would then raise the prospect of requiring jury trials and findings of guilt beyond a reasonable doubt for any supervised release proceedings, which is precisely the outcome that Johnson sought to avoid when it construed all supervised release proceedings. That's sort of an overstatement. Most of the supervised release violations that I get are people who are committing relatively minor crimes. They're using drugs. They're driving while intoxicated. Occasionally, they've committed other crimes. I think what your adversary is saying makes this somewhat unique, is a severe mandatory minimum sentence. Suppose the mandatory minimum sentence had been 50 years. Would your argument be the same? My argument would be the same under the Sixth Amendment, but I wouldn't have similar grounds perhaps under the Fifth Amendment and due process considerations. But that's not an argument that's been made here. That's not an argument that's been preserved here. And the defendant concedes that plain error review applies here, so ultimately the defendant's ultimate showing, even if the court were to adopt the Sixth Amendment reading, is to establish some kind of prejudice. The defendant's underlying sentence here was 39 months. His revocation imprisonment term is 60 months. That's 99 months, which is less than 120 months statutory maximum, which is what defendant alleges is the violation here, that 3583K raises the statutory maximum as to him. That's clearly not the case on the facts here. And so even if the court were to adopt the defendant's reading and apply the Sixth Amendment in this context, there's no prejudice, therefore no plain error, and therefore the district court's order is not subject to reversal. The government petitioned for cert in the Tenth Circuit case. I can't speak from personal knowledge about where everything is going in the Tenth Circuit. I just know that the Department of Justice is considering all of its options. All right. Thank you, counsel. Thank you very much. Rebuttal. One quick point and then one a little bit longer. We don't concede that this is plain error review. We just say that it doesn't matter. We prevail on plain error review. But the overarching point, and I want to try to make this as clear as I can, because I'm not sure that it has been, is that when we talk about the regular supervised release scheme, and that's the context that Johnson, all the other prior cases from this circuit, that's a totally discretionary scheme that gives the court total freedom to decide what the punishment is. And it also caps the punishment to the original offense. So the class of felony, the original offense is committed, caps the punishment. That's what 3583E3 does. So under that regime, yeah, there's no problem. When we talk about revocation, there's no Sixth Amendment right, and that's all those cases held, because that is just what we've always been doing. When we revoke parole, we revoke probation, we revoke supervised release, it's part of the original proceeding. This is a different animal. This says that if you commit a new offense, and we define what the new offenses are, then the court has no discretion. It must revoke, it must sentence you to five years, irrespective of the statutory two-year cap that otherwise exists, and you can be sentenced to a maximum of life. That is just not like any supervised release scheme that anyone's ever been a part of. This is wholly, totally, qualitatively different, and it doesn't sound like supervised release. It sounds like punishment for a new offense. So we can call it supervised release, and then we can pretend that all the stuff that they said in Johnson, that this court said in Huerta Pimentel applies, but it just doesn't. This is different. All right, thank you, counsel. Thank you to both counsel. The case just argued is submitted for decision by the court.
judges: Rawlinson, N.R. Smith, Korman